UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ZACHARY ALLEN,

Plaintiff,

v.

JOEL E. TINGEY; JOHN K. THOMAS; ALEX E. MUIR; DANIEL R. CLARK; TYSON HUMMER; DETECTIVE SCHWEITZ; ALAYNE BEAN; PENNY MANNING; JULIE MATTHEWS; SHANNON TAYLOR; AL RAMIREZ; DONA CLEMO; ISCI; IDOC; BOARD OF CORRECTION; ERIC D. FREDERICKSON; KATE MENEAR; LT. ULTIS; CAPT. ROSS; WARDEN RICHARDSON; DEFENDANT HIGGENS; JOSH TEWALT; SGT. JUAREZ; and DEFENDANT VITALOBOS,

Defendants.

Case No. 1:20-cv-00015-DCN

**INITIAL REVIEW ORDER BY SCREENING JUDGE**

The Clerk of Court conditionally filed Plaintiff Zachary Allen's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

## 1. Screening Requirement

The Court must review complaints filed by prisoners seeking relief against a

governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

**2. Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

**3. Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Institution. Plaintiff

alleges that, in April 2019, he was "wrongfully put back in prison," apparently as a result of alleged parole violations. *Compl.*, Dkt. 1, at 1. Plaintiff alleges that the charges were illegal and that he was "arrested with excessive force." *Id*. at 2.

In addition, Plaintiff states that the IDOC "continues to writ [him] C-notes," that he has been verbally threatened (including "racially prejudicial threats") by unidentified officers, that Plaintiff has had property and money stolen, that Plaintiff has been denied his incoming mail, and that his legal mail has been opened and read outside of his presence. *Id*. at 2–3. Plaintiff also claims that he is in a dangerous environment and that the warden and unidentified officers have told him they want Plaintiff to "get in a fight or hurt so they can charge [him] with battery." *Id*. at 2. Finally, Plaintiff alleges that "they" have denied him his wages for his prison job, have cut some of his work shifts, and refused to start Plaintiff's "programming on time." *Id*. at 3.

**4. Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Complaint. His allegations are overly vague and generalized, and he has not linked the different Defendants to any of the actions of which he complains.

The Court will grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be

liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### *A. Claims Related to Plaintiff's Criminal Conviction or Pending Charges*

It is unclear whether the allegedly illegal charges against Plaintiff remain pending. If they are, any claims that challenge those charges appear to be subject to dismissal pursuant to *Younger v. Harris*, 401 U.S. 37, 46 (1971). In that case, the United States Supreme Court held that it is only in the most unusual of circumstances that a federal court should interfere in an ongoing state criminal matter or in a threatened state court prosecution. Rather, the Court determined that abstention is usually appropriate in such an instance.

In order for a federal court properly to abstain from hearing a case under the *Younger* doctrine, three factors must be present: (1) there must be an ongoing state judicial proceeding; (2) the proceeding must implicate an important state interest; and (3) there must be an adequate opportunity in the state proceeding to raise the constitutional challenge. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Where abstention is appropriate, a federal court may entertain an action only where "extraordinary circumstances" are present, including: (1) where irreparable injury is both "great and immediate," *Younger*, 401 U.S. at 46; (2) where the state law is "flagrantly and patently violative of express constitutional prohibitions," *id.* at 53-54; or (3) where there is a showing of "bad faith, harassment, or any other unusual circumstances that would call

for equitable relief," *id.* at 54.

Additionally, any claims that call into question the validity of Plaintiff's criminal conviction or parole revocation are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In that case, the United States Supreme Court held that a civil rights claim "is not cognizable under § 1983" if the plaintiff's success on that claim would "render a conviction or sentence invalid." *Id*. at 486-87. Thus, if a favorable verdict in a civil rights action "would necessarily imply the invalidity" of the plaintiff's conviction, the plaintiff must first show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[1] *Id.* at 487. As the Supreme Court later clarified, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

*Heck* applies to claims of improper probation or parole revocations. *See Wilkinson*, 544 U.S. at 82 (holding that an inmate may initiate a § 1983 action to seek invalidation of "state *procedures* used to deny parole eligibility … and parole suitability," but he may *not* seek "an injunction ordering his immediate or speedier release into the community."

[1] Plaintiff alleges that he has obtained state post-conviction relief, but he offers no other details of his conviction. Compl. at 2. However, a grant of relief under Idaho's Uniform Post-Conviction Procedures Act, *see* Idaho Code § 19-4901 *et seq.*, does not necessarily mean that the conviction has been reversed or overturned so as to satisfy the favorable termination requirement of *Heck*. Instead, the usual result of a grant of post-conviction relief is a new trial, which would, in turn, implicate the *Younger* abstention doctrine.

(emphasis added)); *Baskett v. Papini*, 245 Fed. Appx. 677, 678 (9th Cir. Aug. 21, 2007) (unpublished) ("The district court properly dismissed Baskett's section 1983 action as *Heck*-barred because his allegations necessarily call into question the validity of the probation revocation, and Baskett failed to allege that his sentence has been invalidated."); *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) ("A judgment in favor of Jackson on his illegal seizure claim would necessarily imply the invalidity of the revocation of his probation and parole.... Thus, Jackson's action is not cognizable under § 1983 at this time ....").

If Plaintiff chooses to amend his Complaint, he should explain the status of his conviction and revocation charges and how they are related to his current incarceration.

### *B. Standards of Law for Various Constitutional Claims*

From the allegations in the Complaint, the Court concludes that Plaintiff is asserting claims under the First, Fourth, Eighth, and Fourteenth Amendments. Thus, Plaintiff should consider the following standards of law when preparing an amended complaint.

#### i. First Amendment Interference-with-Mail Claims

Inmates enjoy a First Amendment right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). However, a prison or jail may adopt regulations or practices that impinge on a prisoner's First Amendment rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Specific allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for violation of the First Amendment. *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). A temporary delay in the delivery of mail

resulting from a prison's security inspection, however, does not violate a prisoner's First Amendment rights. *Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999).

Because "freedom from censorship is not equivalent to freedom from inspection or perusal," prison officials have the right to open and to inspect a prisoner's incoming and outgoing mail—even legal mail from attorneys to inmates or from inmates to attorneys. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). However, prison officials may not *read* an inmate's legal mail. *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (*Nordstrom II*) (First Amendment claim); *Nordstrom v. Ryan*, 762 F.3d 903, 910-11 (9th Cir. 2014) (*Nordstrom I*) (Sixth Amendment claim). "[E]ven a single instance of improper reading of a prisoner's [legal] mail can give rise to a constitutional violation." *Mangiaracina v. Penzone*, 849 F.3d 1191, 1197 (9th Cir. 2017) (Sixth Amendment context); *see also Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1212 (9th Cir. 2017) ("[A] plaintiff need not allege a longstanding practice of violating his First Amendment rights in order to state a claim for relief on a direct liability theory.").

Further, "prisoners have a protected First Amendment interest in having properly marked legal mail opened [and inspected] only in their presence." *Hayes*, 849 F.3d at 1211. However, the negligent opening of a prisoner's legal mail outside the inmate's presence does not rise to the level of a constitutional violation and, therefore, does not violate § 1983. *Id.* at 1212 ("Hayes has alleged a plausible claim that his protected mail was *arbitrarily or capriciously* opened outside his presence on two separate occasions.") (emphasis added); *id*. at 1218 ("An allegation that prison officials opened a prisoner's legal mail, without an allegation that the mail was deliberately and not negligently opened, is

not sufficient to state a cause of action under § 1983.") (Bybee, J., concurring); *see also Kingsley*, 135 S. Ct. at 2472; *Daniels*, 474 U.S. at 332. Finally, to state a colorable First Amendment claim that legal mail was opened outside the presence of an inmate, the plaintiff must allege that the mail was from an attorney and that the mail "was properly marked as 'legal mail.'" *Hayes*, 849 F.3d at 1211.

ii. Excessive Force Claims

Claims of excessive force during the course of an arrest are analyzed under the Fourth Amendment, which prohibits unreasonable searches and seizures. Arresting officers may use only an amount of force that is "objectively reasonable in light of the facts and circumstances confronting them," and the officers' "underlying intent or motivation" is not relevant.[2] *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation marks omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," and whether an officer's use of force was objectively reasonable is based on the totality of the circumstances. *Id.* at 396 (internal quotation marks and citation omitted).

This objective reasonableness standard requires "balancing the nature and quality of the intrusion on a person's liberty with the countervailing governmental interests at stake," and a Court must consider several factors in this analysis. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053-54 (9th Cir. 2007). First, the "quantum of force" must be

---

[2] Although the excessive force reasonableness standard is an objective test, it must not be confused with the standard for negligence claims under state law, as negligence is not actionable under § 1983. *See Kingsley*, 135 S. Ct. at 2472; **Error! Main Document Only.***Daniels*, 474 U.S. at 332.

assessed. Second, the governmental interests at stake must be analyzed in light of the following: (1) the severity of the crime for which the plaintiff was arrested; (2) whether the plaintiff posed a threat to the safety of the officers or others; (3) whether the plaintiff was actively resisting arrest or attempting to flee; and (4) the availability of alternative methods of subduing the plaintiff. *Id.*

iii. Eighth Amendment Claims

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. Although prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

To state a claim under the Eighth Amendment, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment, and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

With respect to the subjective prong of an Eighth Amendment claim, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

Prison officials who act with deliberate indifference "to the threat of serious harm or injury" by one prisoner against another are subject to liability under § 1983. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having

stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal quotation marks, citation, and alterations omitted). Although even an obvious danger does not result in liability if the official is not subjectively aware of it, a prison official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843.

Allegations of verbal harassment, abuse, or threats are not sufficient to state an Eighth Amendment claim, even if the comments were racist or if the defendant official threatened to cause bodily harm. *See Vaughn v. Smith*, 127 F.3d 1108 (9th Cir. 1997) (unpublished) ("Vaughn contends defendant Smith violated his Eighth Amendment rights when he made racist remarks to Vaughn and threatened his life. This contention lacks merit …."); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) (allegations that correctional counselor told plaintiff that he would transfer him to a higher custody status unit if he tried to go to the law library and that he would be sorry if he filed a class action suit were not actionable under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (allegations that defendant "personally informed plaintiff that if he never cut his hair and shaved his beard that he would lose what class he had and would have a bad time at Wrightsville" and that defendant "verbally abused and threatened him for filing grievances" did not constitute a constitutional violation); *McFadden v. Lucas*, 713 F.2d 143, 147 (5th Cir. 1983) ("While twenty-two officers armed with sticks and threatening

demeanor may arguably be excessive, we must, in the absence of physical abuse, concur with the lower court's dismissal. The alleged conduct, absent more, cannot be said to rise to the level of conduct which 'shocks the conscience'" (citation omitted)).

iv. Due Process Claims

The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving an individual of a liberty or property interest without following the proper procedures for doing so. *Wolff v. McDonnell*, 418 U.S. 539, 558–66 (1974). Because liberty interests are "generally limited to freedom from restraint," a prisoner possesses a liberty interest under the federal Constitution only when a change occurs in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

If an inmate shows that he has been deprived of a liberty or property interest, then a court must consider to what process the prisoner was due. This determination must be made on a case-by-case basis. *Wolff*, 418 U.S. at 560 ("Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted).

The "essence of due process" is notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). The specific process to which a person is entitled depends on the consideration of three factors: (1) the private interest ... affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the

procedures used[] and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

Prisoners do not possess a liberty interest in prison employment. *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997). In addition, being forced to work a prison job—even without pay—does not violate the Constitution, so long as there is no state-created interest in such wages. *See Moor v. Palmer*, 603 F.3d 658, 661 (9th Cir. 2010) ("[A] state … statute may create a liberty interest … provided that the statute contains mandatory language and imposes substantive limitations on the discretion of [the official taking the challenged government action]."); *cf. Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1963) (noting that the Thirteenth Amendment excludes convicted criminals from the prohibition of involuntary servitude, and they may be forced to work without pay). There is no such liberty or property interest in Idaho, because the prisoner employment statute does not contain mandatory language. *See* Idaho Code § 20-412 ("Each prisoner[] who is engaged in productive work … *may* receive … compensation …. Such compensation, *if any*, shall be in accordance with a graduated schedule ….") (emphasis added).

Moreover, there is no due process right to rehabilitation or to be provided with particular programs in prison. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (no right to a particular security classification or to prison rehabilitative services); *Bauman v. Arizona Dep't of Corrs.*, 754 F.2d 841, 844 (9th Cir. 1985) (no right to work furlough classification); *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982) (no

general right to rehabilitation), *abrogated in part on other grounds by Sandin*, 515 U.S. 472.

The right to due process is "not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels*, 474 U.S. 328 (emphasis omitted). And even the *intentional* deprivation of personal property by prison officials will not support a due process claim if the prisoner has an adequate remedy under state law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Idaho has adopted the Idaho Tort Claims Act, Idaho Code § 6-901, *et seq*., to provide a remedy for citizens injured by the tortious acts of governmental entities, officials, and employees. As a general rule, "every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment or duties." Idaho Code § 6-903(1). One exception to this rule is that "any law enforcement officer," acting "without malice or criminal intent and without gross negligence or reckless, willful and wanton conduct," shall not be liable for a claim that "[a]rises out of the detention of any goods or merchandise." Idaho Code § 6-904B(1). It is unclear whether this exception to liability applies when a jail or prison official deprives an inmate of personal property. Importantly, however, even assuming that this exception applies in the jail or prison context, it would not immunize prison officials from liability for acts that are grossly negligent, reckless, or willful and wanton. Therefore, Idaho has provided a state law remedy for the intentional loss or destruction of prisoners' property.

v. <u>Potential Claims against Counties</u>

Plaintiff has not named any county in the caption of the Complaint, but it appears that he might be intending to assert claims against the county in which he was convicted and/or charged. *See* Compl. at 1 (asking the Court to "bring fourth [sic] the above counties and people involved in this case and matter"). If Plaintiff does so intend, he should be aware that any amended complaint must meet the standards articulated in *Monell v. Department of Social Services*, 436 U.S. 658, 690-94 (1978).

Under *Monell*, the requisite elements of a § 1983 claim against a county or other municipal defendant are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

vi. <u>Eleventh Amendment Immunity</u>

The Court also notes that all claims against the state entities named in the Complaint are subject to dismissal pursuant to the Eleventh Amendment. That amendment prohibits a

federal court from entertaining a suit brought by a citizen against a state or a state entity, absent a waiver of state sovereign immunity. *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Section 1983 does not constitute such a waiver. *Quern v. Jordan*, 440 U.S. 332, 342–44 (1979). Nor has Idaho itself waived its sovereign immunity for constitutional claims. *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012) (unpublished). Finally, only a "person" may be sued pursuant to 42 U.S.C. § 1983, and a state is not considered a "person" under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff should omit the state entity Defendants from any amended complaint.

**5. Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of an Eighth Amendment or due process claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant. Plaintiff must also explain the status of his criminal conviction and any pending charges for purposes of *Younger* and *Heck*, as set forth above.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*,

896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "First Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

**ORDER**

**IT IS ORDERED** that Plaintiff has 28 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. If Plaintiff does not amend within 28 days, this case may be dismissed without further notice.

UNITED STATES COURTS DISTRICT OF IDAHO

DATED: March 2, 2020

David C. Nye
Chief U.S. District Court Judge