UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ZACHARY ALLEN,<br><br>                    Plaintiff,<br><br>          v.<br><br>JAY CHRISTENSEN; JOSH TEWALT; EVAN PAGE; IDAHO DEPARTMENT OF CORRECTION; TIM McKAY; GABRIELLA PEREZ; KATE BELTRAN; DANEL HUDON; STATE BOARD OF CORRECTION; TAYLOR WILSON; CPL. SHAPPEL MORRISON; LT. ALOU; LT. HUST; CPL. DRIGGS; DEFENDANT FRAUS; JILLIAN SCHLESTE; SARA HART; and OFFICER MULENEX,<br><br>                    Defendants. | Case No. 1:20-cv-00015-DCN<br><br>**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE** |

Plaintiff Zachary Allen is a prisoner proceeding pro se and in forma pauperis in this civil rights action. The Court previously reviewed Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915 and 1915A. The Court determined that the Complaint failed to state a claim upon which relief could be granted because its allegations were overly vague and did not link any particular action to any particular Defendant. *See* Initial Review Order, Dkt. 8, at 3. The Complaint also contained claims that appeared to be barred by *Younger v. Harris*, 401 U.S. 37, 46 (1971), or *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court allowed Plaintiff an opportunity to amend.

Plaintiff proceeded to file six amended complaints, the last of which the Court will now review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Having screened the Sixth Amended Complaint,[1] the Court enters the following order allowing Plaintiff to proceed on some of his claims.

## 1.    Screening Requirement

As the Court explained in its Initial Review Order, the Court must dismiss a prisoner or in forma pauperis complaint—or any portion thereof—that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(d)(2) & 1915A(b).

## 2.    Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the

---

[1] Plaintiff's most recent pleading is entitled "Affadavit [sic] of Criminal Complaint." *See* Dkt. 19 at 1. The Court construes the pleading as a Sixth Amended Complaint asserting civil rights claims. *See* Dkt. 5 at 1 n.1.

complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

### 3.      Factual Allegations

Plaintiff states that, in April 2020, he overheard Defendant Shappel Morrison speaking with non-defendants Sergeant Taylor and Lieutenant Greenland. Defendant Morrison allegedly stated, "Allen still refuses to drop the lawsuits as ordered and its [sic] costing us, he's getting way to [sic] comfortable in PC [protective custody] on his walk." *Sixth Am. Compl.*, Dkt. 19, at 1. Sergeant Taylor responded, "I suggest we move him down to A-walk from where he's at, it'll create tension in the dorm as he is on a political walk." *Id.* Greenland then stated, "Well we've already had a few fights on this tier …, if he gets beat down, it may persuade him to do as ordered." *Id.* Morrison then said, "I can't wait to see him get beat down, it'll be entertaining." *Id.*

Before Plaintiff was moved to the new housing unit, Plaintiff was hit in the mouth and shoved around by another inmate, who threatened Plaintiff and stated, "You leave this walk … we'll get you and beat your ass, remember what happens to pussies Rat." *Id.* at 2. Plaintiff informed Greenland that Plaintiff would be in danger if he was moved to another housing unit. Greenland responded, "Get over it Mr. Allen and man up, theirs [sic] nothing we can do, go back to the dorm, Nigger." *Id.* Plaintiff also informed non-defendant Taylor, non-defendant Lieutenant Lau, and Defendant Morrison of his fear of being attacked if he had to move to another unit, but he "was continuously ignored." *Id.*

The next day, non-defendant Officer Dodge told Plaintiff that he had to move to A-walk or he would receive a Disciplinary Offense Report ("DOR"). Plaintiff pressed the

emergency button and was taken to Morrison's office. Morrison stated that Plaintiff needed to "accept the consequences," and Defendant Corporal Driggs told Plaintiff, "By god Allen just drop the lawsuit or we can't help you." *Id*. at 3.

Plaintiff then "asked for SS Watch," which may be a form of suicide watch, because Plaintiff was "depressed from harassment." *Id*. Plaintiff spoke with Defendants Lieutenant Hust and Sergeant Taylor Wilson, who asked Plaintiff questions before taking him to SS Watch. Plaintiff later asked about his property, which is restricted on suicide watch. Non-defendant Taylor told Plaintiff, "You can't have your property until you learn how to live in that dorm." *Id*.

Plaintiff was seen by Defendant Clinician Sara Hart, apparently for mental health treatment. Plaintiff told Hart "what was going on." Hart allegedly told Plaintiff, "According to Warden Tim McKay until you drop the lawsuits there's nothing I can do for you accept [sic] bring you anxiety handouts." *Id*.

Plaintiff was "hit a few more times by an inmate." *Id*. Plaintiff informed Defendant Corporal Fraus about the attacks and that Plaintiff was afraid for his safety. Fraus responded, "Cut the bullshit Mr. Allen its [sic] P.C. this has never happened before in the 9 odd years I've been in this unit, go back to your damn dorm sue happy nigger, that's an order." *Id*. Plaintiff did not return to his dorm and, as a result, received a DOR. Plaintiff was taken back to A-Block "and thrown into [a] door" by non-defendant Gambell. *Id*. at 4.

Plaintiff had a hearing on his DOR and met with Defendants Alou, Hust, Wilson, and Perez, who "approved [Plaintiff] to go back" to general population. *Id*. However, at the time Plaintiff filed the Sixth Amended Complaint, he was still being housed in

segregation.

**4.**    **Discussion**

   *A.*    *Section 1983 Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a

plausible civil rights claim, a plaintiff must allege a violation of rights protected by the

Constitution or created by federal statute proximately caused by conduct of a person acting

under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be

liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a

reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence

is not actionable under § 1983, because a negligent act by a public official is not an abuse

of governmental power but merely a "failure to measure up to the conduct of a reasonable

person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

The Eleventh Amendment prohibits a federal court from entertaining a suit brought

by a citizen against a state or state entity absent a waiver of state sovereign immunity. *Hans*

*v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465

U.S. 89, 100 (1984). Section 1983 does not constitute such a waiver. *Quern v. Jordan*, 440

U.S. 332, 342–44 (1979). Nor has Idaho itself waived its sovereign immunity for

constitutional claims. *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at

*6 (D. Idaho Apr. 23, 2012) (unpublished). Finally, only a "person" may be sued pursuant

to 42 U.S.C. § 1983, and a state is not considered a "person" under that statute. *Will v.*

*Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff's § 1983 claims

against the Idaho Department of Correction and the State Board of Correction will be

dismissed.

        i.      <u>First Amendment Retaliation Claims against Defendants Morrison,
Driggs, Hart, and McKay</u>

Within the prison context, most constitutional claims are subject to the deferential analysis outlined by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). In that case, the Court examined a First Amendment issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions and held that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.

The *Turner* Court identified four factors to consider when determining whether a prison regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89–93.

The *Turner* analysis appropriately allows prison officials substantial leeway in the management of their prisons. "Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must apply the *Turner* test so as to "accord great

deference to prison officials' assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

The First Amendment includes the right to be free from retaliation for exercising constitutional rights. An inmate asserting a retaliation claim must show the following: "(1) ... that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). Rather, when analyzing a prison official's potential reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*,

449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If the adverse action would have been taken even without the inmate's exercise of protected conduct, the plaintiff cannot satisfy the causation element of the retaliation claim. *Hartman*, 547 U.S. at 260.

Finally, even if an inmate proves that his protected conduct was the but-for cause of an adverse action by a prison official, the inmate's retaliation claim fails so long as that

action also reasonably advanced a legitimate penological interest. The state unquestionably has a legitimate interest in maintaining institutional order, safety, and security in its prisons, *Rizzo*, 778 F.2d at 532, and the "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

Plaintiff alleges that he overheard Defendant Morrison (1) speaking to non-defendants about the nuisance of Plaintiff's lawsuits, and (2) stating that moving Plaintiff to another tier could result in Plaintiff being attacked, which would be "entertaining." Plaintiff also claims that Defendant Driggs told Plaintiff, in response to Plaintiff's fear of being attacked if he was moved to another unit, that Driggs could not help Plaintiff unless Plaintiff dropped the lawsuits. These allegations give rise to a plausible inference that Morrison and Driggs disregarded Plaintiff's fear for his safety because of Plaintiff's protected activity. Therefore, Plaintiff will be allowed to proceed on his retaliation claims against these Defendants.

Defendant Hart's alleged statement that, pursuant to a directive from Defendant McKay, she could not give Plaintiff mental health treatment unless Plaintiff dropped his lawsuits is sufficient to state a plausible retaliation claim against Defendants Hart and McKay, as well.

    ii.    <u>Due Process Claims against Defendants Fraus, Alou, Hust, Wilson, and Perez</u>

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person cannot

obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). Because an inmate's liberty is necessarily circumscribed as a result of conviction, prisoners have a liberty interest in freedom from restraint only if a change occurs in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

With respect to a procedural due process claim regarding prison disciplinary proceedings and disciplinary segregation, a district court must analyze three factors in determining whether a prisoner has or had a liberty interest in avoiding discipline: (1) whether disciplinary segregation was essentially the same as discretionary forms of segregation (such as administrative segregation); (2) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) whether the length of the plaintiff's sentence was affected. *Id*. at 486–87. If these factors are not met, a court may find there is no liberty interest in avoiding prison discipline, which means that a prisoner has no due process claim arising from the disciplinary proceeding. Applying these factors in *Sandin*, the Supreme Court determined that a prisoner lacked a protectable liberty interest in avoiding 30 days of confinement in disciplinary segregation. *Id*. at 487.

If a prisoner possesses a protectable liberty interest with respect to prison disciplinary proceedings, then a court must consider to what process the prisoner was due. This determination must be made on a case-by-case basis. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) ("Consideration of what procedures due process may require under any

given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted).

The "essence of due process" is notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). The specific process to which a person is entitled depends on the consideration of three factors: (1) "the private interest ... affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used[] and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

Plaintiff provides no allegations relevant to any of the *Sandin* factors set forth above. Therefore, the Sixth Amended Complaint does not plausibly allege that Plaintiff had a liberty interest with respect to the DOR or with respect to segregation. Therefore, Plaintiff's due process claims will be dismissed.[2]

---

[2] In addition to liberty interests, the Due Process Clause also applies to property interests, which are not created by the Constitution but are instead created "by existing rules or understandings that stem from an independent source such as state law.'" *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). However, the right to due process is "not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis omitted)). Moreover, even the *intentional* deprivation of personal property by prison officials will not support a due process claim under § 1983 if the prisoner has an adequate remedy under state law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Idaho has adopted the Idaho Tort Claims Act ("ITCA"), Idaho Code § 6-901, *et seq*., to provide a remedy for citizens injured by the tortious acts of governmental entities, officials, and employees. As a general rule, "every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment or duties." Idaho Code § 6-903(1). One exception to this rule is that "any law enforcement officer," acting "without malice or criminal intent and without gross negligence or reckless, willful and

iii.        Equal Protection Claim against Defendant Fraus

The Fourteenth Amendment guarantees equal protection of the law. The purpose of the Equal Protection Clause "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation and quotation marks omitted). Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Even where similarly situated persons are treated differently by the state, "state action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id*. at 277; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be

---

wanton conduct," shall not be liable for a claim that "[a]rises out of the detention of any goods or merchandise." Idaho Code § 6-904B(1). It is unclear whether this exception to liability applies when a jail or prison official deprives an inmate of personal property. Importantly, however, even assuming that this exception applies in the jail or prison context, it would not immunize prison officials from liability for acts that are grossly negligent, reckless, or willful and wanton.

Accordingly, to the extent that Plaintiff is claiming that prison officials negligently lost his property, he has no due process claim regardless of the existence of a post-deprivation state law remedy for negligent conduct. With respect to his allegations that prison employees recklessly lost or intentionally stole his property (or denied him access to that property), he has a potential remedy under the ITCA. Therefore, Plaintiff may not proceed on his property claims.

no 'negligent' violations of an individual's right to equal protection.... There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Equal protection claims alleging disparate treatment or classifications generally are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). Otherwise, equal protection claims are subject to a rational basis inquiry, in which case "the Equal Protection Clause requires only a rational means to serve a legitimate end." *Id*. at 442.

Because inmates are not a protected class under the Equal Protection Clause, their equal protection claims are generally subject to rational basis review. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998). In a rational basis analysis, the relevant inquiry is whether the defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted). Moreover, an additional layer of deference to prison officials is usually required under *Turner. See Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context, ... even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are reasonably related to legitimate penological interests." (quotation omitted)).

However, race-based classifications involving prisoners are not subject to rational basis review or the deferential *Turner* inquiry. Instead, such classifications are governed

by a strict scrutiny analysis. *Johnson v. California*, 543 U.S. 499, 507 (2005). "Under strict scrutiny, the government has the burden of proving that racial classifications are narrowly tailored measures that further compelling governmental interests." *Id*. at 505 (internal quotation marks omitted).

Though the Court in no way condones the unprofessional and repugnant use of racial slurs—such as those uttered by Defendant Fraus (and non-defendant Greenland)—such language alone does not give rise to a constitutional deprivation under § 1983. *See Partee v. Cook Cty. Sheriff's Office*, 863 F. Supp. 778, 781 (N.D. Ill. 1994) ("[A]llegations of verbal threats, racial epithets, and continued harassment by [defendants] do not give rise to an actionable claim for relief under § 1983."); *Shabazz v. Pico,* 994 F. Supp. 460, 474 (S.D.N.Y.1998) (dismissing claims based on racial slurs because "verbal harassment or profanity alone, … no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (internal quotation marks omitted). Therefore, Plaintiff's equal protection claim against Defendant Fraus must be dismissed.

     iv.    <u>Eighth Amendment Claims</u>

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. Although prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472

(1995).

Eighth Amendment claims are not subject to the analysis set forth in *Turner v. Safley*. To state a claim under the Eighth Amendment, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).[3]

> a) *Failure-to-Protect Claims against Defendants Morrison, Driggs, and Fraus*

Prison officials who act with deliberate indifference "to the threat of serious harm or injury" by one prisoner against another are subject to liability under § 1983. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its

---

[3] Verbal harassment and abuse, without more, are not sufficient to state a constitutional deprivation under § 1983. *See Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) (allegations that correctional counselor told plaintiff that he would transfer him to a higher custody status unit if he tried to go to the law library and that he would be sorry if he filed a class action suit were not actionable under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (allegations that defendant "personally informed plaintiff that if he never cut his hair and shaved his beard that he would lose what class he had and would have a bad time at Wrightsville" and that defendant "verbally abused and threatened him for filing grievances" did not constitute a constitutional violation); *McFadden v. Lucas*, 713 F.2d 143, 147 (5th Cir. 1983) ("While twenty-two officers armed with sticks and threatening demeanor may arguably be excessive, we must, in the absence of physical abuse, concur with the lower court's dismissal. The alleged conduct, absent more, cannot be said to rise to the level of conduct which 'shocks the conscience'" (citation omitted)). Even threats of bodily injury are insufficient to state an Eighth Amendment claim. *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987). And, although racial slurs are abhorrent and morally reprehensible, they do not constitute cruel and unusual punishment. *See Shabazz*, 994 F. Supp. at 474. Thus, Plaintiff's allegations of threats, harassment, and verbal abuse do not state a plausible claim under the Eighth Amendment.

course." *Farmer*, 511 U.S. at 833 (internal quotation marks, citation, and alterations omitted). Although even an obvious danger does not result in liability if the official is not subjectively aware of it, a prison official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843.

Plaintiff's failure-to-protect claims against Defendants Morrison and Driggs are plausible. Morrison and Driggs were aware of Plaintiff's fear for his safety, and their alleged refusal to protect Plaintiff unless he dropped his lawsuits gives rise to a reasonable inference that they deliberately disregarded a substantial risk of serious harm. Thus, Plaintiff will be allowed to proceed on his failure-to-protect claims against Morrison and Driggs.

The Sixth Amended Complaint also states a plausible failure-to-protect claim against Defendant Fraus. Plaintiff states that he informed Fraus of the threats against him by other inmates, but Fraud did not take action. Further, Fraus allegedly called Plaintiff a "sue happy nigger," suggesting that Fraus had a malevolent motive for failing to ensure Plaintiff's safety.

b)      *Mental Health Treatment Claims against Defendants Hart and McKay*

The Eighth Amendment includes the right to adequate medical and mental health treatment in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to

serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A prison official or prison medical provider acts with "deliberate indifference...only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson*, 290 F.3d at 1187. In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per

curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution."). If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

Differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers— are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015).

Non-medical prison personnel generally are entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

Plaintiff alleges that Defendant Hart stated she could not offer him mental health treatment, other than handouts about anxiety, because Defendant McKay told her Plaintiff would first have to drop his lawsuits. This allegation plausibly suggests that these two Defendants denied Plaintiff mental health treatment not because they believed it to be unnecessary, but for reasons that had nothing to do with Plaintiff's medical needs. Therefore, Plaintiff may proceed on his mental health treatment claims against Defendants Hart and McKay.

v.      <u>Claims under Other Constitutional Provisions</u>

Plaintiff also cites the Seventh, Ninth, and Seventeenth Amendments to the Constitution. However, Plaintiff's allegations do not implicate these provisions—which preserve the right to a federal jury trial in civil cases, disclaim disparagement of unenumerated rights, and provide for popular election of senators, respectively. Thus, these claims will be dismissed.

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 20

vi.      Claims of Violations of Prison Policies

Plaintiff's allegations that Defendants' actions violated prison policy are insufficient to state a plausible civil rights claim under § 1983. *See Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (stating that, as long as minimum constitutional requirements are met, a prison need not comply with its "own, more generous procedures"), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Huron Valley Hosp. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) ("[Section 1983] is thus limited to deprivations of *federal* statutory and constitutional rights. It does not cover official conduct that allegedly violates *state* law.") (relying on *Baker v. McCollan*, 443 U.S. 137, 146 (1979)). "It is not the function of this Court to review regulations established by prison authorities unless a constitutional violation is presented." *Lowrey v. Walton Cty. Sheriff's Dep't*, No. 3:07-CV-121CDL, 2008 WL 660332, at *3 (M.D. Ga. Mar. 5, 2008) (unpublished). Therefore, Plaintiff's claims of prison policy violations will be dismissed.

**B.      Claims under the Americans with Disabilities Act**

Plaintiff's Sixth Amended Complaint also invokes the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. *See* Dkt. 19 at 3. The ADA generally prohibits discrimination on the basis of an individual's disability.

Title II of the ADA applies to an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Title II extends to prison inmates who are deprived of the benefits of participation in prison programs, services, or activities

because of a disability. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998).

In order to proceed with an ADA claim, a plaintiff must show (1) that he has a disability; (2) that he is otherwise qualified to participate in or receive a public entity's services, programs, or activities; (3) that he was denied the benefits of those services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was *by reason of* his disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). The governmental entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). "The ADA does not require perfect parity among programs offered by various facilities that are operated by the same umbrella institution. But an inmate cannot be categorically excluded from a beneficial prison program based on his or her disability alone." *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1221 (9th Cir. 2008).

In contrast to a § 1983 claim, by statutory definition a Title II ADA claim must be brought against the state or the state entity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (holding that Title II of the ADA validly abrogates Eleventh Amendment immunity for states for conduct that actually violates the Fourteenth Amendment); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA …."); *compare Miranda B. v. Kitzhaber*, 328 F.3d 1181,

1187-88 (9th Cir. 2003) (per curiam) (holding that Title II's statutory language does not prohibit a plaintiff from requesting injunctive action against state officials in their official capacities). Claims against individuals asserted under the ADA are treated as official capacity claims because no individual capacity claims exist under the statute. *See, e.g., Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001).

The Sixth Amended Complaint contains no allegations plausibly suggesting that Plaintiff is disabled or that he has been denied access to a government benefit or program because of that disability. Therefore, Plaintiff's ADA claims will be dismissed.

### C.    *State-Law Claims*

Plaintiff also asserts state law claims under various statutes found in (1) Title 18 of the Idaho Code, which is Idaho's criminal code, and (2) Title 19 of the Idaho Code, which is Idaho's code of criminal procedure. Plaintiff's state law claims are implausible because the statutes cited by Plaintiff do not create a private right of action.

The Idaho Supreme Court has explained the analysis a court must undertake to determine whether a private cause of action exists:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

*Yoakum v. Hartford Fire Ins. Co.*, 923 P.2d 416, 421 (Idaho 1996) (emphasis omitted) (relying on Restatement (Second) of Torts § 874A).

The Idaho Supreme Court held in *Yoakum* that there was no private right of action under certain Idaho criminal statutes. The court relied on the following factors: the statutes were intended to protect the general public, the statutes provided for a criminal punishment, and there was no indication (1) that the legislature intended to create a private cause of action, or (2) that providing an additional civil remedy was necessary to assure the effectiveness of the statutes. *Id.*

Similar reasoning exists here with respect to the state statutes cited in the Amended Complaint. As in *Yoakum*, there is no indication that the Idaho Legislature intended to create a private right of action under these statutes or that an additional civil is necessary to ensure the statutes' effectiveness. Because Idaho has not created a private right of action under Title 18 or 19 of the Idaho Code, Plaintiff's state law claims based on these statutes must be dismissed.

### D.   *Claims against Defendants without Allegations*

The Sixth Amended Complaint contains no allegations against Defendants Christensen, Tewalt, Page, Beltran, Hudon, Schleste, and Mulenek. Therefore, any claims against these Defendants will be dismissed as implausible.

## CONCLUSION

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful. Rather, it merely finds that some of Plaintiff's claims are plausible—meaning that these claims will not be summarily dismissed at this time but should proceed to the next stage of litigation. This Order is not intended to be a final or comprehensive analysis of Plaintiff's claims.

Defendants may file a motion for dismissal on any basis other than failure to state a claim.[4] Because (1) prisoner filings must be afforded a liberal construction, (2) prison officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by incarceration records, an early motion for summary judgment— rather than a motion to dismiss—is often a more appropriate vehicle for asserting defenses such as non-exhaustion or entitlement to qualified immunity. In such instances, the parties may be required to exchange limited information and documents directly relevant to the defense at issue.

## ORDER

**IT IS ORDERED:**

1.    Plaintiff may proceed on the following claims:

- First Amendment retaliation claims against Defendants Morrison, Driggs, Hart, and McKay;

- Eighth Amendment failure-to-protect claims against Defendants Morrison, Driggs, and Fraus; and

- Eighth Amendment medical treatment claims against Defendants Hart and McKay.

    All other claims against all other Defendants are DISMISSED, and all other Defendants are TERMINATED as parties to this action.

2.    Defendants Morrison, Driggs, Hart, McKay, and Fraus will be allowed to

---

[4] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Amended Complaint under §§ 1915 and 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to §§ 1915 and 1915A and may be filed only in extraordinary circumstances.

waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Sixth Amended Complaint (Dkt. 19), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

a.     **Mark Kubinski**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of Defendants Morrison, Driggs, and McKay, and Fraus, and potentially on behalf of Defendant Hart, as it is unclear whether Hart is an IDOC employee or an employee of Corizon, Inc., the private entity providing Idaho inmates with medical treatment under contract with the IDOC.

b.     **Kevin West and Dylan Eaton,** Parsons Behle & Latimer, 800 W. Main Street, Suite 1300, Boise, Idaho, 83702, potentially on behalf of Defendant Hart.

3.     Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, identifying the individuals for whom

service will not be waived.

4.     If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or for certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice without further notice.

5.     The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

6.     Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

7.     Dispositive motions must be filed no later than 300 days after entry of this Order.

8.     Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

9.     The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly

identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

10.    All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

11.    No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

12.    Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

13.    Pursuant to General Order 324, this action is hereby returned to the Clerk of

Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: June 11, 2020

David C. Nye
Chief U.S. District Court Judge